UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TESSA HOLLOWAY | CIVIL ACTION |
| VERSUS | NO. 23-692-RLB |
| ABBVIE, INC., ET AL. | CONSENT |

## ORDER

Before the Court is Defendant's Motion to Dismiss (R. Doc. 3). It is opposed by Tessa Holloway ("Plaintiff"). (R. Doc. 5). AbbVie Inc., Allergan, Inc., Allergan Unlimited Company, and Zeltiq Aesthetics, Inc. ("Defendants") have replied to Plaintiff's opposition. (R. Doc. 7).

**I.    Background**

On June 21, 2023, Plaintiff commenced the captioned action in the 19th Judicial District Court of the Parish of East Baton Rouge, Louisiana. (R. Doc. 1-2). Plaintiff brings claims under the Louisiana Products Liability Act (the "LPLA") against Defendants for their alleged failure to adequately notify CoolSculpting providers of the allegedly rising risks of CoolSculpting patients suffering from Paradoxical Hyperplasia ("PH"). (R. Doc. 1-2). In her Petition for Damages (the "Petition"), Plaintiff makes claims under each of the LPLA liability theories: (1) manufacturing defect; (2) design defect; (3) failure to warn; and (4) breach of express warranty. *Broussard v. Proctor & Gamble Co.*, 463 F. Supp. 2d 596, 603 (W.D. La. 2006). (R. Doc. 1-2). The relevant factual allegations in the Petition, accepted as true for the purposes of resolving Defendants' Motion to Dismiss, are as follows:

- Zeltiq Aesthetics, Inc., owned by Allergan Unlimited Company, and Allergan Inc., which are owned by Abb Vie, Inc., "created, designed, manufactured, labeled, marketed, advertised, distributed, and sold the CoolSculpting® system medical device" (the "CSMD"). (R. Doc. 1-2 at ¶ 3).
- The CSMD, "a Class II prescription medical device[,]" uses "Cryolipolysis®, a non-invasive procedure" to freeze and kill fat cells. (R. Doc. 1-2 at ¶¶ 5, 7).

1

- "At all material times, Defendants provided documents and forms to CoolSculpting® providers to use when administering the CoolSculpting® procedure to patients, including consent forms with vague language about" PH. (R. Doc. 1-2 at ¶ 21).

- PH is "an enlargement and hardening of tissue in the treated area, which is the opposite effect of the medical device's advertised purpose[;] the only method of treatment is invasive surgery." (R. Doc. 1-2 at ¶ 25).

- "[S]ince 2011, Defendants . . . received reports of consumers developing PH after CoolSculpting®. . . . Defendants named the condition 'Paradoxical Hyperplasia' and in 2012, Defendants created [a] diagnosis criteria for the condition." (R. Doc. 1-2 at ¶ 29).

- "Defendants estimate[ed] in 2013 the [PH] incident rate [was] 1 in 3,500 patients[;] however, the number of people developing the condition was increasing [and Defendants] did not notify CoolSculpting® providers, the public, or the FDA about the substantial increase in incidence rate." (R. Doc. 1-2 at ¶ 34).

- "Defendants never notified . . . providers about its post-market discovery of PH or what it knew about the deforming condition that it received since 2011. Defendants strategically used an inaccurate 2014 JAMA article in its training materials[.]" (R. Doc. 1-2 at ¶ 36).

- "Defendants manipulated the calculation of the incidence rate and stated inaccurate incidence rate statistics to CoolSculpting® providers and instructed its employees to use the words 'rare' when referring to PH in their communications with CoolSculpting® providers, the public, and the FDA." (R. Doc. 1-2 at ¶ 38).

- "On June 21, 2022, Plaintiff underwent CoolSculpting® treatment at Z Aesthetic Dermatology [in] Baton Rouge, Louisiana[, and a]fter several follow-up appointments . . . Plaintiff[ received a]  PH diagnosis [from] Dr. Zedlitz[ that] was confirmed per the Defendants' 'Clinical Event Form - Paradoxical Hyperplasia Checklist' and . . . the medical team for Defendants[.]" (R. Doc. 1-2 at ¶¶ 44, 45, 46, 47).

- "As a result of Defendants' systemic failure to adequately warn CoolSculpting® providers about the danger of the [CSMD], Plaintiff's CoolSculpting® provider was not adequately warned of the severity, permanence, and likelihood of PH, the adverse effect of CoolSculpting®, and the invasive and aggressive surgical treatments required to manage PH[, so that a]s a result of Defendants' conduct, Plaintiff was not properly informed about PH prior to undergoing CoolSculpting®." (R. Doc. 1-2 at ¶¶ 49, 50).

- "Had Plaintiff been properly informed of the extent of PH's seriousness, incidence, permanence, and the true likelihood that she would develop this condition that results in the exact opposite effect of the device's advertised purpose, Plaintiff would not have undergone the CoolSculpting® procedure." (R. Doc. 1-2 at ¶ 51).

## II.     Arguments of the Parties

Defendants argue that because Plaintiff has not adequately alleged any of her LPLA theories of liability, her case should be dismissed. (R. Docs. 3, 3-1). Regarding Plaintiff's failure

2

to warn claims, Defendants argue that the learned intermediary doctrine[1] applies and that the CSMD manual (the "Manual")[2] sent to providers gives adequate warnings regarding PH. (R. Docs. 3-1, 3-2). Defendants point out that, in the context of summary judgment, the Eleventh Circuit has already held that, as a matter of law, the Manual warnings are "objectively 'accurate, clear, and unambiguous' to warn medical professionals[.]" *Cates v. Zeltiq Aesthetics, Inc.,* 73 F. 4th 1342, 2023 WL 4671283, at *4 (11th Cir. 2023) (internal citations omitted). (R. Doc. 3-1). The Manual states that PH is a "Rare Adverse Event" and it is described as "[v]isibly enlarged tissue volume within the treatment area, which may develop two or five months after treatment." (R. Doc. 3-2). The Manual also states that "[s]urgical intervention may be required" if PH occurs, notes that six PH cases were reported out of 4,792 studies, and cites three scholarly articles addressing PH occurring after Cryolipolysis. (R. Doc. 3-2).

      Plaintiff agrees with Defendants that the learned intermediary doctrine applies but argues it would be premature to dismiss the case based on *Cates* when "there has been no discovery [revealing what] documents and verbal assurances were relayed to Dr. Zedlitz[,]" Plaintiff's provider. (R. Doc. 5). Plaintiff primarily relies on *McNeil v. Wyeth,* 462 F. 3d 364, 368 (5th Cir. 2006) (Fifth Circuit applied the Texas rule of sending adequacy questions to the jury when a drug warning noted that a condition was a risk but failed to note that the risk was higher if the drug was used long-term.), and *Brown v. Glaxo, Inc.,* 1999-1531 (La. App. 1 Cir. 11/15/00), 790 So. 2d 35, 40-41, *writ denied,* 2000-3457 (La. 2/9/01), 785 So. 2d 827, and *writ denied,* 2001-

---

[1] *Marks v. OHMEDA, Inc.,* 2003-1446 (La. App. 3 Cir. 3/31/04), 871 So. 2d 1148, 1157, *writ denied,* 2004-1653 (La. 10/8/04), 883 So. 2d 1019, and *writ denied,* 2004-1617 (La. 10/8/04), 883 So. 2d 1020 (citation omitted) ("[A] drug [or device] manufacturer has a duty to warn the prescribing doctor, rather than the patient, of . . . risks[.]").

[2] This Court considered the Manual in its review of the facts because documents "a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim[.]'" *Collins v. Morgan Stanley Dean Witter,* 224 F. 3d 496, 498-99 (5th Cir. 2000) (Citation omitted); *See Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.,* 456 F. App'x 336, 340-41 (5th Cir. 2011).

0035 (La. 2/9/01), 785 So. 2d 832 (court concluded that although an injection's warnings were sufficient, the manufacturer's agent's representations to a doctor about his wife's symptoms "interdicted or superseded the written warning to the doctor.").

Regarding Plaintiff's manufacturing defect, design defect, and breach of express warranty claims, Defendants argue that Plaintiff has stated no facts regarding any defects or warranties, while Plaintiff asserts that she "included in her complaint allegations of design defect, manufacturing defect[,] and breach of warranty." (R. Docs. 3-1, 5).

Defendants also assert that because "Zeltiq [Aesthetics, Inc.,] a subsidiary of AbbVie Inc., is the manufacturer of the [CSMD,] AbbVie Inc., Allergan, Inc., and Allergan Unlimited Company[, which] have not designed or manufactured the [CSMD,] are not proper defendants in this case." (R. Doc. 3-1). Plaintiff does not address this issue.

## III. Law and Analysis

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action, establishing more than a "sheer possibility" that the plaintiff's claim is true. *Id.* at 678. A claim is only facially plausible if a plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal relevant evidence of each element of the plaintiff's claim." *Pellegrin v. C.R. Bard,* No. CV 17-12473, 2018 WL 3046570, at *2 (E.D. La. June 20, 2018) (citation omitted).

When reviewing a motion to dismiss, courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.,* 631 F. 3d 777, 783 (5th Cir. 2011) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L. Ed. 2d 179 (2007) (citations omitted)). A court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *See Lormand v. U.S. Unwired, Inc.*, 565 F. 3d 228, 232 (5th Cir. 2009).

## B. Legal Analysis

### i. Implied Preemption

This Court must first consider whether Plaintiff's state claims rely on state laws preempted by the FDA Act pursuant to 21 U.S.C. § 360(k). In the Fifth Circuit, state laws regarding Class II devices are subject to preemption under the Medical Device Amendments if specific FDA regulations apply to the devices at issue. 21 U.S.C. § 360(k); *See Moore v. Kimberly–Clark Corp.,* 867 F.2d 243 (5th Cir.1989). A state law is preempted by an FDA regulation if "the state law at issue creates a requirement that is related to the device's safety or effectiveness and is 'different from or in addition to' the federal requirement." *Hughes v. Bos. Sci. Corp.,* 631 F. 3d 762, 768 (5th Cir. 2011) (citation omitted).

The FDA Act section titled *Contact Cooling System for Aesthetic Use* applies to the CSMD. 21 C.F.R. § 878.4340. This section references the FDA's *Guidance for Industry and Food and Drug Administration Staff; Class II Special Controls Guidance Document: Contact Cooling System for Aesthetic Use*[3] which states that labeling for contact cooling systems must

---

[3] This Court takes judicial notice of this document. Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court

comply with 21 C.F.R. § 801.109(d). 21 C.F.R. § 801.109(d) states that a prescription-controlled device shall be exempt from a layman-type warning if its labeling includes "any relevant hazards, contraindications, side effects, and precautions" the prescriber needs to know about to use the device safely. 21 C.F.R. § 801.109. All parties agree that Louisiana's state learned intermediary doctrine applies such that "Defendants [only] owed a duty to make adequate warnings to [her doctor]." (R. Docs. 3, 5, 7). As the Louisiana learned intermediary doctrine is no "different from" 21 C.F.R. § 801.109(d) and does not result in an "addition to the federal requirement[,]" a finding of preemption is unnecessary. *Hughes,* 631 F.3d at 768.

### ii. Plaintiff's Failure to Warn Claim Must Be Dismissed

"Pursuant to the Louisiana Products Liability Act, a plaintiff asserting a failure-to-warn claim must prove: (1) a manufacturer's failure to adequately warn the prescribing physician of a risk associated with the product that the physician did not otherwise know about, and (2) that the failure to warn was the cause in fact and the proximate, or legal, cause of the plaintiff's injury." *In re Taxotere (Docetaxel) Prod. Liab. Litig.,* 994 F. 3d 704, 708 (5th Cir. 2021); *See Stahl v. Novartis Pharms. Corp.,* 283 F. 3d 254, 267 (5th Cir. 2002); *See also Willett v. Baxter Int'l, Inc.,* 929 F. 2d 1094, 1098 (5th Cir. 1991); *Pellegrin v. C.R. Bard,* No. CV 17-12473, 2018 WL 3046570, at *4 (E.D. La. June 20, 2018). To prove causation, a "plaintiff must show that a proper warning would have changed the decision of the [prescribing] physician, *i.e.* that but for the inadequate warning, the [prescribing] physician would not have used or prescribed the product." *Willett*, 929 F.2d at 1099. Thus, to survive dismissal, a pleading must provide enough facts to support a showing that a physician may not have prescribed a certain procedure had the

---

or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (citing *Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir.2007) ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand.")).

6

physician been properly warned. *Pellegrin,* 2018 WL 3046570, at *4; *Flagg v. Stryker Corp.,* 647 F. App'x 314, 316 (5th Cir. 2016) (Fifth Circuit affirmed a dismissal of a failure to warn claim when plaintiff included no "allegations about whether the [d]efendants failed to warn [plaintiff]'s doctor of the risk involved and whether [plaintiff]'s doctor would have used the implants if given such a warning, as required under Louisiana law.").

Defendants ask this Court to rely on *Cates* to hold that Plaintiff's failure to warn claim must be dismissed because the Manual adequately warns prescribers of PH risks. (R. Doc. 3-1). In *Cates,* the Eleventh Circuit held that Defendants' warnings were legally adequate, irrespective of the prescribing doctor's opinion, because they clearly and unambiguously noted the ailment plaintiff suffered. *Cates,* 73 F. 4th at 1349-50. The *Cates* decision, while persuasive, is not controlling or appropriately applied at this stage in the proceeding. To begin, the court in *Cates* noted that its determination of the sufficiency of the warning was guided by the Florida Supreme Court's determination that notification of the possible symptoms at issue were alone sufficient without any greater specificity. *Id.* at 1348. In addition, *Cates* was decided on summary judgment, and the basis for its decision went beyond the warning itself. Specifically, the court considered both the warning regarding "potential consequences in both its CoolSculpting user manual **and its training session materials**." *Id.* (emphasis added). The opinion described a training presentation specifically addressing PH and the possibility that "surgical intervention may be required." *Id*.

Without the benefit of the full scope of information directed to the providers here, as well as why that information was sufficient under Louisiana law to inform a prescribing provider of the risks involved, this Court cannot yet make a similar determination as a matter of law. *See Kampmann v. Mason*, 05-423 (La. App. 5 Cir. 1/17/06), 921 So. 2d 1093, 1096 (A defendant's

7

failure to produce "medical testimony or affidavits from the treating physician or any other physician" that the warning was adequate defeated its motion for summary judgment.); *see also Stahl,* 283 F. 3d at 267 ("[A] prescription drug warning is not adequate as a matter of law simply because the warning label contains a clear and unambiguous reference to the adverse reaction suffered by the plaintiff. For summary adjudication of an inadequate warning claim to be appropriate, the plaintiff's prescribing physician must also unequivocally testify that the warning was adequate to inform him or her of the risks involved in prescribing the drug. The doctor's testimony provides added assurance that the language in the package insert was worded strongly enough to adequately inform him or her of the actual level of risk involved."); *Brocato v. DePuy Orthopaedics, Inc.,* No. CIV.A. 14-2607, 2015 WL 854150, at *6 (E.D. La. Feb. 25, 2015) ("[T]he Fifth Circuit has interpreted Louisiana [law] to condone summary adjudication only [if] the defendant points both to an unambiguous mention of the subject risk *and* testimony of the treating physician establishing his understanding of such risk based on the warning.").

While this Court finds Plaintiff has pleaded enough facts to show that Defendants failed to adequately warn Plaintiff's physician, Plaintiff's pleading still falls short. While Plaintiff has alleged (at the pleading stage) that the warning was inadequate, Plaintiff has failed to allege whether her treating physician would have prescribed the CSMD had the physician been adequately warned. Consequently, Plaintiff's failure to warn claim must be dismissed. *Brooks v. Amgen, Inc.,* No. 18-CV-00657-BAJ-EWD, 2019 WL 507491, at *4 (M.D. La. Feb. 8, 2019) (A motion to dismiss was granted when "[n]o allegation [wa]s made as to whether the treating physician would have prescribed [the medicine] or not."); *Dubroc v. Bristol-Myers Squibb,* No. CV 18-833-SDD-RLB, 2019 WL 3756469, at *5 (M.D. La. Aug. 8, 2019) (A plaintiff "failed to state a cognizable failure to warn claim [when she] failed to allege anything regarding

8

[defendant's] warning to her physician, or that he would have treated her differently had he received a warning."); *Huffman v. Squibb,* No. CV 16-3714, 2016 WL 6024532, at *2 (E.D. La. Oct. 14, 2016) (A failure to warn claims was dismissed when a plaintiff failed to allege his "doctor would not have prescribed [a medicine] had [he] received an adequate warning[.]").

### iii. Plaintiff's Manufacturing Defect Claim Must Be Dismissed

LPLA manufacturing defect claims require more than conclusory allegations and cannot survive motions to dismiss without allegations of how the product is defective and how the defect caused a plaintiff's injuries. *See, e.g., Stahl,* 283 F. 3d at 263 ("[S]ummary judgment is appropriate because Stahl has not provided any evidence suggesting that the particular pills he received deviated in any way from the manufacturer's production standards or from the manufacturer's otherwise identical products."); *Aucoin v. Amneal Pharm., LLC*, No. 11-1275, 2012 WL 2990697, at *10 (E.D. La. July 20, 2012) (A plaintiff's manufacturing defect claim was dismissed when plaintiff did not allege that the product deviated from production standards or identical products.); *Watson v. Bayer Healthcare Pharm., Inc*., No. 13-212, 2013 WL 1558328, at *4 (E.D. La. Apr. 11, 2013) (The court dismissed plaintiff's manufacturing defect claim when plaintiff did not allege how the product deviated from production standards or how the defect caused her alleged injuries); *Kennedy v. Pfizer, Inc*., No. 13-3132, 2014 WL 4093065, at *3 (W.D. La. Aug. 15, 2014) (same). To establish a manufacturing defect claim, a plaintiff must show that, "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R. S. § 9:2800.55; *See Stahl,* 283 F. 3d at 262-63.

The Petition lacks any allegations regarding how the CSMD deviated from Defendants' specifications, performance standards, or identical products. (R. Doc. 1-2). Instead, Plaintiff's manufacturing defect claim rests on one conclusory allegation stating that the CSMD was "unreasonably dangerous in construction or composition[.]" (R. Doc. 1-2 at ¶ 57). This is not enough to establish a manufacturing defect claim under the LPLA.

### iv. Plaintiff's Design Defect Claim Must Be Dismissed

To establish the elements for a design defect claim, a plaintiff must allege (i) that there "existed an alternative design for the product that was capable of preventing the claimant's damage[ and (ii) that t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." La. R. S. § 9:2800.56.

Plaintiff fails to establish the above elements as she provides no allegations regarding what aspect of the CSMD product design caused Plaintiff's PH, how the alleged defect contributed to her PH, or what other alternative designs existed at the time of her procedure. *See Watson*, 2013 WL 1558328, at *4-5 (The court dismissed a complaint that failed to allege how a design was defective and what aspect of the defective design caused the injuries.). (R. Doc. 1-2).

### v. Plaintiff's Breach of Express Warranty Claim Must Be Dismissed

"Under the LPLA, a manufacturer of a product that is unreasonably dangerous because it does not conform to an express warranty about the product is liable for damages caused by that non-conformity." *Pellegrin*, 2018 WL 3046570, at *5 (citing La. R. S. § 9:2800.58). "To establish a breach of express warranty claim, a plaintiff must show that (1) there was an express warranty made by the manufacturer about the product; (2) the express warranty induced the plaintiff to use the product; and (3) the plaintiff's damage was proximately caused because the

10

express warranty was untrue." *Id.* (citing La. R. S. § 9:2800.58; *Caboni v. Gen. Motors Corp.*, 278 F. 3d 448, 452 (5th Cir. 2002)). The LPLA defines "express warranty" as "a representation, statement of alleged fact or promise about a product . . . that represents, affirms or promises that the product . . . possesses specified characteristics or qualities or will meet a specified level of performance." La. R. S. § 9:2800.53(6).

Plaintiff does not directly state what warranty Defendants guaranteed. At best, Plaintiff implies that Defendants warranted that the CSMD was safe and would reduce fat, but this is not enough to support a breach of warranty claim. *See Flournoy v. Johnson & Johnson*, No. 15-5000, 2016 WL 6474142, at *3 (E.D. La. Nov. 2, 2016) (A plaintiff's breach of warranty claim was dismissed for failing to sufficiently "identify the contents of any warranty[.]"); *see also Robertson v. AstraZeneca Pharm., LP*, No. 15-438, 2015 WL 5823326, at *5 (E.D. La. Oct. 6, 2015) (A plaintiff's allegation that defendant made representations in "materials presented to the FDA" was not specific enough to state a claim for breach of warranty.); *Doe v. AstraZeneca Pharm., LP*, No. 15-438, 2015 WL 4661814, at *4 (E.D. La. Aug. 5, 2015) (A plaintiff's allegation that defendant represented to the market that defendant's product was "safe" and "effective" did not satisfy pleading standard.). Plaintiff has therefore failed to satisfy the pleading standard for her breach of express warranty claim.

### vi. AbbVie Inc., Allergan, Inc., and Allergan Unlimited Company

The issue of whether AbbVie Inc., Allergan, Inc., and Allergan Unlimited Company are proper defendants in this case has not been briefed beyond a footnote in Defendants' Motion to Dismiss. (R. Doc. 3). Accordingly, this Court will not rule on the dispute at this time.

## IV. Conclusion

As set forth above, the pleadings in this matter as insufficient and are subject to dismissal. Plaintiff, however, should be given leave to amend under the circumstances. "[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). *See also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016); *Fetty v. Louisiana State Bd. of Private Sec. Examiners,* 611 F. Supp. 3d 230, 250 (M.D. La. Jan. 31, 2020) (deGravelles, J.) ("because Plaintiffs did not amend their complaint in response to a ruling by this Court, and because of the above 'wise judicial practice,' the Court will grant Plaintiffs one final opportunity to amend their complaint to state viable claims.") (citing *JMCB, LLC v. Board of Commerce and Industry, et al.*, 336 F. Supp. 3d 620, 641–42 (M.D. La. Aug. 23, 2018)); *Murphy v. Bos. Sci. Corp.*, No. 18-31, 2018 WL 6046178, at *1 (M.D. La. Nov. 19, 2018) (deGravelles, J.) (same).

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Dismiss (R. Doc. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs shall have twenty-one (21) days in which to amend the operative complaint to cure any of the deficiencies outlined in this Order. Failure to do so will result in the dismissal of these claims with prejudice.

Signed in Baton Rouge, Louisiana, on February 7, 2024.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**